IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GAYNELL GRIER, et al.,<br>individually and on behalf of others<br>similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | No. 3:79-cv-03107 |
| v. | ) <br> ) | Judge Nixon<br>**Sealed** |
| M.D. GOETZ, Commissioner,<br>Tennessee Department of Finance<br>and Administration, et al., | ) <br> ) <br> ) <br> ) | |
| Defendants, | ) <br> ) | |
| and | ) <br> ) | |
| TENNESSEE ASSOCIATION OF<br>HEALTH MAINTENANCE<br>ORGANIZATIONS, et al., | ) <br> ) <br> ) <br> ) | |
| Defendants-Intervenors. | ) | |

## ORDER

Pending before the Court are two motions filed by the parties in the above-captioned

case. Plaintiffs have filed a Motion for Leave to Add Plaintiff Class Representatives ("Plaintiffs'

Motion") (Doc. No. 1746), accompanied by five documents (Doc. Nos. 1748-1 to 1748-5) and a

Statement of Facts (Doc. No. 1750). Defendants filed two documents in response to Plaintiffs'

Motion: first, a Preliminary Response (Doc. No. 1754) and, pursuant to the Court's instruction, a

Supplemental Memorandum (Doc. No. 1770). Thereafter, Plaintiffs filed a Response to

Defendants' Supplemental Memorandum. (Doc. No. 1772.) Additionally, Defendants have filed

a Motion to Summarily Vacate Award of Attorneys' Fees and/or for Leave to Take Discovery

("Defendants' Motion") (Doc. No. 1757), along with a Memorandum in Support (Doc. No.

1758).  Plaintiffs have filed a Response in Opposition to Defendants' Motion.  (Doc. No. 1761.)

The Court held a status conference on December 12, 2011, at which the parties provided brief

oral argument, and a full hearing on the two Motions on February 22, 2012.  For the reasons

given herein, Plaintiffs' Motion is **GRANTED** and Defendants' Motion is **DENIED**.


I.  **BACKGROUND**

The facts relevant to this Order are as follows: Plaintiffs are a class of enrollees in

Tennessee's healthcare program, TennCare.  Defendants are the state agencies that administer

the TennCare program.  On August 13, 2009, the Court awarded Plaintiffs attorneys' fees for

partially prevailing in the defense and revision of the Revised Consent Decree that represented

the parties' settlement agreement.  (Doc. No. 1660.)  Defendants asked the Court to reconsider

and modify that fee award (Doc. No. 1661), and the Court denied Defendants' motion and

upheld the order awarding fees to Plaintiffs (Doc. No. 1699).  On August 16, 2010, Defendants

noticed their appeal to the Sixth Circuit of this Court's decisions regarding the attorneys' fees.

(Doc. No. 1707.)

When the Sixth Circuit Clerk's Office sought to clarify the proper captioning of the case,

Defendants learned that Gaynell Grier, under whose name the litigation had been recently

conducted, died in 2003, and that all of the other class representatives had either died or

withdrawn from the litigation as of 2005.  (Doc. No. 1714 at 9.)  When Defendants notified

Plaintiffs of their findings and inquired as to the identity of the current class representative,

Plaintiffs responded by asserting that the class was and had been adequately represented by

minor Julian Caster ("C.J."), by his next friend, Shawn Caster ("C.S.").  (*Id.* at 10.)  It is

undisputed that Shawn Caster, as an attorney with the Tennessee Justice Center ("TJC"), had

worked on this case as class counsel between November of 2003 and November of 2007. (*Id.* at 11; Doc. No. 1718 at 4.) Ultimately, the appeal was captioned "C.J., by his next friend, C.S.," and Defendants concluded that C.S., as next friend of C.J., is the only remaining class representative and only client of class counsel for purposes of defending the fee award on appeal. (Doc. No. 1714 at 11.)

Defendants filed a motion with the Sixth Circuit for summary vacatur of the attorneys' fees award and remand back to this Court, claiming that neither C.J. nor C.S. had intervened or been certified properly by the Court as class representatives, and that neither was legally qualified to serve as a class representative. (Doc. No. 1714 at 11.) The Sixth Circuit denied Defendants' motion, stating:

> The challenges to the district court's orders and the defenses asserted thereto raise numerous factual issues that should be addressed in the first instance in the district court. If the state seeks to have the award of attorney's fees and costs vacated or modified while the case is on appeal, it should follow the procedure for an indicative ruling set forth in Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1. If the district court certifies that it is inclined to vacate or modify the award of fees and costs or that the state has raised a substantial issue, the state may then move this court to remand under Rule 12.1. The state has not demonstrated that a summary vacatur by this court is warranted.

(Doc. No. 1714-1 at 2.)

Defendants then filed a motion before this Court seeking an indicative ruling as set forth in Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1 (Doc. No. 1715), along with a Memorandum in Support (Doc. No. 1714). Plaintiffs then filed a Response (Doc. No. 1718), to which Defendants filed a Reply (Doc. No. 1721-1). On August 31, 2011, the Court granted this motion in part and denied it in part, certifying that it "raises substantial issues warranting further proceedings before this Court according to Federal Rule of Civil Procedure

62.1." (Doc. No. 1739 at 5.) The Court stated that Defendants could move the Sixth Circuit to remand this case for further proceedings on the motion. (*Id.*) The Court indicated that, should the Sixth Circuit remand the case, it would schedule a status conference with the parties to determine how best to proceed. (*Id.*) On November 7, 2011, the Sixth Circuit Court of Appeals granted Defendants' motion for remand, directing the Court to consider the motion. (Doc. No. 1743.)

On December 7, 2011, Plaintiffs filed their Motion for Leave to Add Plaintiff Class Representatives ("Plaintiffs' Motion") (Doc. No. 1746), accompanied by five documents (Doc. Nos. 1748-1 to 1748-5) and a subsequently-filed Statement of Facts (Doc. No. 1750). Defendants have not responded to the Statement of Facts; rather, they simply assert that many of the facts "are very much controverted" (Doc. No. 1758 at 8). On December 12, 2011, the Court held a status conference in this case to determine how to proceed. At the conference, Defendants indicated that they wanted to have a period of discovery to take depositions, including of C.S. and the proposed class representatives listed in Plaintiffs' Motion. The Court instructed Defendants to file a motion requesting such discovery. Subsequently, Defendants filed a Preliminary Response to Plaintiffs' Motion (Doc. No. 1754), and, on January 10, 2012, a Motion to Summarily Vacate Award of Attorneys' Fees and/or for Leave to Take Discovery ("Defendants' Motion") (Doc. No. 1757), along with a Memorandum in Support (Doc. No. 1758). Plaintiffs filed a Response in Opposition to Defendants' Motion. (Doc. No. 1761.) The Court held a hearing on Plaintiffs' and Defendants' Motions on February 22, 2012. At the hearing, the Court instructed Defendants to file additional briefing regarding their request for discovery into Plaintiffs' proposed new class members. Defendants did so, filing a Supplemental

Memorandum on March 5, 2012.  (Doc. No. 1770.)  Plaintiffs filed a Response to Defendants'

Supplemental Memorandum on March 15, 2012.  (Doc. No. 1772.)


## II.  PLAINTIFFS' FEE AWARD

Pursuant to 42 U.S.C. § 1988(b), in civil rights cases, a "court, in its discretion, may

allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  In 2009, the Court

granted Plaintiffs a fee award based on this statutory provision.  (*See* Doc. No. 1660.)  The

parties now dispute whether this award may stand, in light of the subsequently-discovered facts

regarding the status of Plaintiffs' class representatives.  It is this dispute to which the Court first

turns.  In doing so, the Court will address the parties' arguments regarding whether C.J. was a

proper class representative and Defendants' request for discovery into C.S.'s role in the

litigation.  As such, the Court will first address the majority of Defendants' Motion and

Plaintiffs' Response thereto, leaving discussion of Defendants' request for discovery into

Plaintiffs' six new proposed class representatives to the subsequent section that addresses

Plaintiffs' Motion.

### A.  *Summary Vacatur of Fee Award*

Defendants first argue that the fee award should be vacated because there was no

properly-certified class representative at the time the award was granted.  (Doc. No. 1758 at 5.)

In particular, Defendants challenge a theory proffered by Plaintiffs in a previous filing that C.J.,

through his next friend C.S., had been "implicitly" certified as a class representative, arguing that

"there is no such thing as 'implicit' certification of a class representative."  (*Id.*)  In any event,

Defendants assert that such "implicit" certification is not permitted "where, as here, the person

alleged to have been 'implicitly' certified is categorically disqualified, as a matter of law, from

serving as a class representative because she also served as [c]lass [c]ounsel." (*Id.*)  Thus, because there was no proper certification of C.J., Defendants argue that the award of fees and costs to Plaintiffs under § 1988 must be vacated pursuant to Federal Rule of Civil Procedure 60(b).  (*Id.*)

Plaintiffs respond that C.J. was, in fact, designated as a class representative.  In particular, Plaintiffs point to several filings made by Defendants and the Court in 1996, wherein C.J. was referred to as a class representative and named as a "representative class member," respectively. (Doc. No. 1761 at 3-4.)  Plaintiffs argue that no formal Rule 23 certification was necessary for C.J. because such certification is required to certify a class as a legal entity separate from its class representatives, but the procedure is not necessary to add a class representative to an already-certified class.  (*Id.* at 4.)  Plaintiffs contend that, once a class has been certified, the Federal Rules "do not mandate any particular procedure for adding class representatives . . . , and courts have regularly approved the addition or substitution of new class representatives by a variety of procedures."  (*Id.* at 5.)  According to Plaintiffs, when the Court entered an agreed order on August 27, 1996, "explicitly naming 'C.J.' as a 'representative class member' and granting the entire plaintiff class the injunctive relief requested in his motion," the Court "effectively conferred on him the status of class representative under Rule 23."  (*Id.* at 6.)

After careful consideration, the Court finds that Defendants have not met their burden of showing that the fee award must be summarily vacated.  As an initial matter, the case on which Defendants rely for the proposition that there can be no implied certification of class representatives, *Pasadena City Board of Education v. Spangler*, 427 U.S. 424 (1976), is distinguishable.  *Spangler* involved a claim for "injunctive relief from allegedly unconstitutional segregation of the high schools of the Pasadena Unified School District," with students, joined

by their parents, serving as the plaintiffs. *Id.* at 427. In the Court's view, the most important distinction between *Spangler* and the instant case is that in *Spangler*, the "implied certification" at issue referred to the fact that the district court never officially certified the class *as a whole*. *Id.* at 430 ("And while counsel may wish to represent a class of unnamed individuals still attending the Pasadena public schools who do have some substantial interest in the outcome of this litigation, there has been no certification of any such *class* which is or was represented by a named party to this litigation.") (emphasis added). Even if the Supreme Court's language in *Spangler* could be read as a dismissal of the "implied certification" theory, the certification at the center of this theory was the certification of a *class of plaintiffs*, not the addition of a new class representative to a class that was *previously certified* by a court. Notably, the Third Circuit case to which Defendants cite for additional support of their position describes *Spangler* with this degree of specificity, as opposed to the over-broad reading proffered by Defendants. *See Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 344 (3d Cir. 2003) (finding that the *Spangler* Court "summarily dismissed any doctrine of 'implied *class* certification' in dicta") (emphasis added).

Additionally, the issue before the Supreme Court in *Spangler* was the mootness of the plaintiffs' claims in light of the original student-plaintiffs' graduation from the Pasadena school system. 427 U.S. at 430. While the Supreme Court stated that "the case would clearly be moot" but for the intervention of the United States as a party, *id.* at 430-31, the legal question before the Supreme Court in *Spangler* differs from the question before the Court in this case: whether a fee award granted to Plaintiffs must be vacated because the named class representative was, apparently unbeknownst to the parties, deceased at the time the award was ordered. In light of these distinctions, the Court does not find that *Spangler* necessitates the summary vacatur of Plaintiffs' fee award.

The Court is similarly skeptical of Defendants' arguments that C.J. would have been "categorically disqualified" from serving as a class representative in this case due to C.S.'s role as class counsel for several years. (Doc. No. 1758 at 5.) In making this argument, Defendants rely on *Turoff v. May Co.*, 531 F.3d 1357 (6th Cir. 1976). At the February 22, 2012 hearing, counsel for Defendants argued that *Turoff* stands for the notion that "you cannot simultaneously have [c]lass counsel or any relative or close relation of [c]lass counsel serving as [c]lass representative," and that the rule extends to a case involving "any relation or any associate of [c]lass counsel." (Doc. No. 1769 at 23-24.) Counsel further stated this case should raise concerns "about whether [c]lass counsel are, in fact, properly consulting their clients, the named [c]lass [r]epresentatives, are, in fact, being properly supervised, are, in fact, rightly and properly pursuing the interests of the [c]lass, they are the named [c]lass [r]epresentatives and not simply in this for the fees." (*Id.* at 26.)

The Court does not read *Turoff* to stand for such broad propositions in light of the facts of that case and the resulting concerns articulated by the Sixth Circuit. In *Turoff*, the four named plaintiffs were "three [] attorneys with the law firm of counsel" and the wife of one of the attorneys. 531 F.3d at 1360. The Sixth Circuit determined that these four plaintiffs did "not have standing to represent the class of May charge account customers similarly situated." *Id.* The court stated that there would be "an inherent conflict of interests" if "the same individual" served as a class representative and class counsel, and thus held that "the roles of class representative and of class attorney cannot be played by the same person." *Id.* However, in coming to this conclusion, the Sixth Circuit expressed concern that "the financial recovery for reasonable attorney's fees would dwarf the individual's recovery as a member of the class" and thus found that "the financial interests of the named plaintiffs and of the class are not

coextensive." *Id.* The court also cited the need to "fairly and adequately protect[]" "the interests of a class," to keep "the courts and the public . . . free of manufactured litigation," and to ensure that "proceedings [would] be without cloud." *Id.*

The Court finds that this case is factually distinguishable from *Turoff* and that the concerns articulated by the Sixth Circuit in that case are, therefore, lacking. Most importantly, as counsel for Plaintiffs pointed out at the hearing, *Turoff* was a damages case, whereas this is an injunctive relief case. (Doc. No. 1769 at 9.) Given this distinction, the Sixth Circuit's focus on the conflict of interest in *Turoff* becomes particularly understandable. Such concerns are less evident here, where the monetary award of attorneys' fees became available only after Plaintiffs prevailed on their injunctive relief claim. Additionally, the Court would hardly characterize this case as being an example of "manufactured litigation," given the nature of the relief being sought by Plaintiffs, as compared to the financial focus in *Turoff*. Furthermore, given the salaried status of class counsel such as C.S.—an employee of TJC, which provides pro bono legal services to indigent clients and does not pass on the benefits of fee awards to employees (*see* Doc. No. 1444 at 2)—the Court seriously doubts that such attorneys are "in this for the fees," as counsel for Defendants has suggested.

Another noteworthy factual distinction the Court is compelled to highlight is that three of the four named plaintiffs in *Turoff* were serving as counsel for the proposed class of plaintiffs. Thus, for these for individuals, there was a clear dual role being served. That is not the case here, where C.S., who served as class counsel for an approximately four-year span in a case that was originally filed over three decades ago, served as next friend to her son, C.J. Additionally, to the extent that counsel for Defendants stated at the hearing that *Turoff* stands for the proposition that "relative[s]," "relation[s]," or "associate[s]" of class counsel are barred from

serving as class representatives, the Court believes counsel may have been referring to the fact that a named plaintiff in *Turoff* was the wife of one of the attorney-plaintiffs. Given the Sixth Circuit's emphasis on the dual role of these three attorney-plaintiffs, the Court is unconvinced that the same result would have obtained had the only connection between counsel and the class representatives in *Turoff* been through the spouses, a situation more analogous to the current situation than that of the three attorney-plaintiffs who literally served two roles in the case.

In sum, Defendants' efforts to have the 2009 fee award to Plaintiffs summarily vacated have fallen short. The cases to which they cite for the notion that, as a matter of law, the award must be vacated do not, upon close inspection, mandate that result. Accordingly, Defendants' Motion is **DENIED** insofar as Defendants seek summary vacatur of Plaintiffs' fee award.

### B. *Discovery Regarding the Roles of C.J. and C.S.*

Defendants' next argument is that, if the Court does not summarily vacate the fee award, then discovery into C.J.'s and C.S.'s "supposed appointment, certification, and role as class representative" is necessary. (Doc. No. 1758 at 6.) Defendants cite to several cases for the proposition that "discovery is customary . . . to test the propriety of proposed class representation," and that the "Sixth Circuit [] has acknowledged the need for discovery into newly proposed class plaintiffs." (*Id.* at 6-8.) In particular, Defendants argue that Plaintiffs' proffered undisputed material facts (Doc. No. 1750) "are very much controverted," including that C.S. lacked any personal financial interest in the fee award and that the fees were awarded to TJC. (Doc. No. 1758 at 8-9.) Moreover, Defendants point to the Court's and the Sixth Circuit's reference to "numerous factual issues" that exist in this case. (*Id.* at 9.) At a minimum, Defendants argue that one such factual issue would be "what actions, if any, [C.S.] took in the course of her alleged service as the 'implicitly' certified class representative." (*Id.*)

In Plaintiffs' Response, they argue that discovery into C.S.'s role in this litigation is unnecessary and thus Defendants' request should be denied. Plaintiffs argue that, had Defendants been concerned about any possible conflict due to her role as both class counsel and the next friend of a class representative, Defendants should have raised that issue in November of 2003, when C.S. filed her appearance as class counsel, more than seven years after C.J. had been designated as a class representative. (Doc. No. 1761 at 7.) Plaintiffs further assert that Defendants failed to raise any objections during numerous filings relating to the fee award, at a hearing regarding the award, and in their motion to alter or amend the award. (*Id.* at 8.) As such, Plaintiffs argue that Defendants have "forfeited" the objection, and contend that it is, in any event, moot on the grounds that C.S. withdrew as class counsel in 2007. (*Id.* at 8-9.)

In the event the Court were to overlook Defendants' lack of timely objection, Plaintiffs contend that the record is already clear as to whether C.S. had any financial interest in the award, as she submitted a declaration in 2007 stating that she was "a full-time salaried member of the staff of" TJC. (*Id.* at 9.) Additionally, Plaintiffs argue that the question of C.S.'s financial interest in the case is relevant only if there is a potential conflict of interest between class counsel and the plaintiff class; Plaintiffs assert that there was no such conflict, as her interests in a fee award were "entirely congruent" with the interests of the class and with her personal interests in ensuring due process protections for TennCare enrollees. (*Id.* at 10.)

Plaintiffs also argue that discovery into C.S.'s actions as next friend to C.J. is unnecessary, as Defendants do not explain how this information is relevant to the issue of C.J.'s status as a class representative, and Defendants do not state that this information would have a retroactive effect on C.J.'s status or on the validity of the fee award. (*Id.*) More specifically, Plaintiffs assert that discovery relating to their statement that C.J. and four other class

representatives filed motions on April 19, 1995 "as class representatives" is unnecessary, as this statement is supported by the face of the pleadings, which are in the record, and thus confirmation of these facts is a pure legal issue. (*Id.* at 11.) Additionally, Plaintiffs contend that discovery relating to their statement that the fees were awarded to TJC is unnecessary because "the question of to whom the fees were awarded is a straightforward legal issue with a clear answer: the fees were awarded to the plaintiff class." (*Id.* at 12.)

Lastly, in the event the Court finds that C.J. did not serve as a class representative, Plaintiffs argue that the award should nevertheless stand because, once certified, the class acquired a legal status that was separate from the class representatives. (*Id.* at 14.) Plaintiffs cite to cases from several circuits, including the Sixth Circuit, and the Supreme Court to support the proposition that the mootness of a class representative's individual claim does not similarly moot the claims of the class as a whole, meaning that there still exists a "case or controversy" for the purposes of Article III of the Constitution. (*Id.* at 12-14.) Thus, Plaintiffs argue that it was the class as a whole, and not a particular class representative, that was the prevailing party for the purposes of the fee award. (*Id.*) Moreover, Plaintiffs assert that Defendants have not been prejudiced by the fee award to the class, and argue that Defendants' current effort to vacate the fee award contradicts Defendants' past assertions that they seek to protect the interests of the plaintiff class. (*Id.* at 15.)

Having considered the parties' arguments, the Court finds that discovery into C.J.'s and C.S.'s role in the litigation is unnecessary. Discovery may be warranted when determining the adequacy of a proposed class representative. *See, e.g.*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("'[O]rdinarily the determination [of whether the Rule 23(a) requirements are fulfilled] should be predicated on more information than the pleadings will provide. . . . The

parties should be afforded an opportunity to present evidence on the maintainability of the class action.'") (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)). However, this argument proffered by Defendants misses the mark in this case. Plaintiffs do not now seek to add C.J. or C.S. as class representatives. Rather, the issue before the Court is the validity of a fee award granted to Plaintiffs in 2009.

Additionally, the Court finds merit in Plaintiffs' argument that the prevailing party for the purposes of the award is the class as a whole. As the Supreme Court stated in *Sosna v. Iowa*, upon the certification of a class action, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest" of a class representative. 419 U.S. 393, 399 (1975). Thus, it was the Plaintiff class as a legal entity that was the prevailing party for the purposes of the fee award, not a particular class representative or other individual member of the class. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1174 n.10 (6th Cir. 1990) ("In cases where group-wide relief is requested or arguably obtained it will usually be appropriate to determine prevailing-party status by considering the certified class as a whole."). In any event, class counsel was certainly not the prevailing party for the purposes of the fee award. *See Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) ("Section 1988 makes the prevailing party eligible for a discretionary award of attorney's fees. . . . it is the party, rather than the lawyer, who is so eligible."). Indeed, Defendants appear to acknowledge as much, citing to *Venegas* for this very proposition. (Doc. No. 1758 at 5.)

In short, any actions taken by C.S. during her relatively brief role as class counsel and as next friend to C.J. are irrelevant as to the validity of the attorneys' fee award, and Defendants' request for backward-looking discovery is thus unnecessary. The award was granted to the Plaintiffs as a class, not to an individual member, and not to the attorneys who represented

Plaintiffs or to a particular attorney who worked on this case for four years. As to this point, it is noteworthy that Defendants have cited to no portion of the Court's Order granting Plaintiffs attorneys' fees that would indicate that the Court intended to grant the award to anyone other than the class as a whole. In the end, any results from Defendants' requested discovery would not change the fact that the class of Plaintiffs is the prevailing party for the purposes of the 2009 fee award. Defendants' request for discovery as it relates to C.S. and C.J. is, therefore, **DENIED**.

### III. PLAINTIFFS' PROPOSED NEW CLASS REPRESENTATIVES

The second broad issue before the Court is Plaintiffs' request to add six class members, by their next friends, as named class representatives. (Doc. No. 1746 at 1.) Plaintiffs note that Judge Wiseman authorized the substitution of these same individuals as class representatives in another case in this District, *John B. et al. v. Emkes et al.* (No. 3:98-0168). (*Id.*) In support of their request, Plaintiffs have provided brief descriptions of each proposed class representative's medical issues and experiences with the TennCare appeals process. (*Id.* at 2-5.) Additionally, Plaintiffs have filed several documents that further outline the proposed representatives' qualifications to serve as named class representatives, including transcripts of depositions taken in the *John B.* case. (Doc. Nos. 1748-1 to 1748-5.)

In their Response to Plaintiffs' Motion, Defendants argue that "it seems dubious" that the proposed representatives can satisfy the Sixth Circuit's test for certification. (Doc. No. 1754 at 2.) First, Defendants contend that, because the proposed representatives are minors, they cannot fairly and adequately represent the entire class, which is composed of TennCare enrollees of all ages. (*Id.*) In particular, Defendants argue that "the State has historically treated children under

[twenty-one] differently from adults as a policy matter," and "enrollees under [twenty-one] are protected by specific Early [] Periodic, Screening, Diagnosis, and Treatment ("EPSDT") provisions of the Medicaid statute, and by a separate consent decree in *John B.* . . . that do not apply to adults." (*Id.*) Second, Defendants argue that the individuals' "proposed dual service as class representatives in both this case and in *John B.* could very well give rise to disabling conflicts." (*Id.* at 4.) Defendants specifically point to the proposed representatives' pre-existing relationship with class counsel, who are also serving as class counsel in *John B.* (*Id.*) As such, Defendant argues that the proposed representatives should not be certified as named class representatives in this case, "at least until such time as any discovery authorized by the Court and any briefing accounting for its fruits have been completed." (*Id.* at 5.) Defendants renew these arguments in their own Motion, where they "request[] leave to take discovery from each of the newly proposed class representatives, including by way of depositions, interrogatories, and document requests." (Doc. No. 1758 at 9-11.)

Pursuant to the Court's instruction at the February 22, 2012 hearing, Defendants filed a Supplemental Response to Plaintiffs' Motion, further detailing their request for discovery. (Doc. No. 1770.) Defendants first elaborate on why the discovery taken in *John B.* is insufficient for the purposes of certification in this case. They argue that the *John B.* depositions focused on TennCare's EPSDT program, the topic of that case, and thus did not cover their qualifications to serve as class representatives in this case, and were not "primarily about" the State's due process obligations under TennCare. (*Id.* at 2.) Defendants acknowledge that the individuals' experiences with TennCare's appeals process were discussed, but argue that the depositions did not focus on "the procedural intricacies" of the appeals system, including many requirements that are part of the consent decree in this case. (*Id.* at 2-4.)

Because of these inadequacies, Defendants assert that discovery into the proposed class representatives is necessary before they can be certified by the Court. (*Id.* at 4.) Defendants argue that "basic discovery" is "routinely permitted to assess the adequacy of a proposed class representative." (*Id.* at 5.) Defendants have identified the following topics on which they would like to conduct discovery: (1) a "more detailed exploration" of the representatives' experience with the appeal process; (2) a "more detailed exploration" of their representatives' understanding of the requirements and provisions of the consent decree in this case; (3) whether the representatives understand their obligations as class representatives, whether they can meet those obligations, and how they will do so; (4) how the representatives will distinguish their roles and obligations in *John B.* from their proposed roles in this case; (5) whether the representatives have a conflict of interest due to their relationship with class counsel in *John B.*; (6) whether and how the representatives can represent the interests of adult class members; and (7) the representatives' experiences with TennCare reform, their views on TennCare reform, and how they would address issues in the future should there be a difference between benefits awarded to the over- and under-twenty-one populations. (*Id.* at 5-6.)

Plaintiffs have responded to Defendants' Supplemental Memorandum, arguing that "discovery will unjustifiably add to the delay and expense of satellite fees litigation that has already stretched over more than six years." (Doc. No. 1772 at 1.) As an initial matter, Plaintiffs assert that Defendants have not previously sought discovery from proposed class representatives in this case, and did not seek discovery from the same six individuals in *John B.*, thus undercutting Defendants' argument in previous filings that discovery into class representatives is "routine."[1] (*Id.* at 2 n.1.)

---

[1] In their Supplemental Memorandum, Defendants note that the *John B.* depositions were taken in relation to the State's motion to vacate the consent decree and dismiss that case. (Doc. No. 1770 at 2.)

Plaintiffs also argue that Defendants are mistaken about the topics of the depositions in *John B.* (*Id.* at 3.) Plaintiffs provide excerpts from several of these depositions, and assert that the State did ask all of the next friends of the six minors about all of the adverse actions they had experienced, and, in most cases, whether they received notice of the action, understood the basis for the action, appealed the action, went to a hearing, were represented by counsel at the hearing, if the hearing was in person or by phone, whether they were satisfied by the outcome, and whether they had problems navigating the appeals process. (*Id.* at 3-6.) Plaintiffs, however, acknowledge that the State did not ask every next friend about every provision of the consent decree in this case during these depositions. (*Id.* at 6.)

Next, Plaintiffs contend that Defendants' argument regarding possible conflicts is flawed, as Defendants have access to all of the documents relating to the adverse actions against the proposed representatives, including notices and appeals. (*Id.*) As such, Plaintiffs argue that Defendants would have the information necessary to determine whether there is a conflict of interest between the proposed class representatives and other unnamed class members. (*Id.*)

Plaintiffs further argue that many of the "avenues of inquiry" proposed by Defendants are irrelevant and unnecessary. In particular, Plaintiffs assert that the questions about the provisions of the consent decree and appeals process would involve a knowledge of "legal intricacies" that is not required for an individual to serve as a class representative. (*Id.* at 7.) Instead, Plaintiffs argue that proposed representatives must only show that they have common interests with unnamed class members and that they will vigorously prosecute the interests of the class through counsel. (*Id.* at 8.) Plaintiffs argue that these criteria are met, as the proposed class representatives are class members and thus have an interest in having an adequate notice and appeal process, and they will suffer the same injury if the notice and appeal protections in the

consent decree are violated. (*Id.*) Moreover, Plaintiffs contend that the cases cited by Defendants in their Supplemental Memorandum are distinguishable on the basis that the proposed representatives in those cases seemed to lack a familiarity with and an interest in the particular cases, which is not true of the proposed class representatives here. (*Id.* at 8-9.)

Lastly, Plaintiffs argue that there is no conflict of interest on the grounds that the proposed class representatives are all under twenty-one because the due process rights that are the subject of this case apply equally and uniformly to all TennCare enrollees regardless of their age. (*Id.* at 9.) In any event, Plaintiffs assert that this would be a legal issue, and discovery would have no bearing on it. (*Id.*)

Certification of class representatives is governed by Federal Rule of Civil Procedure 23(a)(4). Pursuant to Rule 23(a)(4), class representatives must "fairly and adequately protect the interests of the class." The Sixth Circuit has articulated two criteria for finding that a proposed class representative satisfies the requirements of Rule 23(a)(4): "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (quotation omitted).

In general, "the threshold for establishing adequacy is quite low." *In re Nortel Networks Corp. "ERISA" Litig.*, No. 3:03-md-01537, 2009 U.S. Dist. LEXIS 130143, at *39 (M.D. Tenn. Sept. 2, 2009). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quotation omitted). However, a named plaintiff "need not demonstrate extensive knowledge about the legal or factual details of their cause of action." *In re Nortel Networks Corp. "ERISA" Litig.*, 2009 U.S. Dist. LEXIS 130143, at *40. Additionally, the inquiry "turns

in part on the competency of class counsel and in part on the absence of conflicts of interest." *UAW v. GMC*, 497 F.3d 615, 626 (6th Cir. 2007) (quotations omitted). More specifically, a court should determine if there is a conflict between class members and the named plaintiffs. *Beattie*, 511 F.3d at 563.

A court "has broad discretion in deciding whether to certify a class," so long as the court follows the "framework of Rule 23." *In re Am. Med. Sys.*, 75 F.3d at 1079 (citation omitted). "There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Id.* (quotation omitted). Generally speaking, the court should make determinations regarding certification "on more information than the pleadings provide," and "parties should be afforded an opportunity to present evidence on the maintainability of the class action." *Id.* (quotation omitted).

In seeking certification of the six proposed class representatives, Plaintiffs do not merely rely on pleadings. Rather, Plaintiffs filed depositions of the four next friends of the six proposed representatives that were taken in connection with the *John B.* case. (Doc. Nos. 1748-1, 1748-2, 1748-4, & 1748-5.) Having examined the four depositions, the Court finds that the next friends provided detailed testimony about their experiences with the TennCare appeals process.

The first deposition was given by S.A., as next friend to Binta B., who is sixteen, suffers from Dandy Walker Syndrome, hydrocephalus, chronic seizures, and cerebral palsy. (Doc. No. 1746 at 2.) Binta is "non-verbal, non-ambulatory, and blind," and "requires frequent suctioning, nourishment via feeding tube, regular turning which requires assistance, and nursing care." (*Id.*) During her deposition, S.A. testified extensively regarding her experience filing appeals related to denials of services and medical equipment for Binta. (*See* Doc. No. 1748-1.) More specifically, S.A. testified regarding appeals concerning personal assistant services, including the

change in services Binta received during the pendency of the appeals (*id.* at 23-29, 35-36, 42-44, 66-67, 141-43); an appeal concerning S.A.'s request to have a nurse accompany Binta to school (*id.* at 55-57); multiple appeals concerning the number of hours of nursing Binta was to receive, including the information provided to S.A. on how to file an appeal, and the process S.A. employed to do so (*id.* at 57-62, 106-111); appeals regarding missed nursing days and hours (*id.* at 165-66); an appeal regarding denial of dental services (*id.* at 138); appeals concerning prescriptions for medical equipment, including a SmartVest, a wheelchair ramp installed at their home, and a wheelchair lift to access a van (*id.* at 79-82, 92-95, 139-40); and an appeal regarding transportation services (*id.* at 137).

The second deposition relates to Aiden L., age five, and Nakia L., age six, who "are medically fragile adoptive children." (Doc. No. 1746 at 3.) Their next friend, S.L., gave detailed testimony regarding her experiences with TennCare. (Doc. No. 1748-2.) S.L. testified regarding an appeal concerning in-home therapy services for Nakia (*id.* at 27-28); an appeal regarding qualifying for hospice care for Aiden (*id.* at 43); her inability to file an appeal regarding Aiden's occupational and physical therapy because she was not given a formal denial letter (*id.* at 46-47); appeals regarding the children being transferred from TennCare Select to AmeriGroup, including the information she received regarding the process to file appeals, how she did so, and the result of the appeal (*id.* at 65-74); other calls she made regarding denials of services (*id.* at 85-86, 104-08); an appeal regarding the denial of medication for Nakia (*id.* at 151); an appeal regarding a hospital crib and mattress for Aiden (*id.* at 156-57); and an appeal regarding a medical collar for Aiden (*id.* at 172-74).

The third deposition is that of I.R., next friend to Sarai R. and Amber R. (Doc. No. 1748-4.) Sarai, age ten, "suffers from autism, scoliosis, anorexia, severe mental retardations, cycling

vomiting syndrome, and severe gastroesophageal reflux disease." (Doc. No. 1746 at 3-4.)

Amber, age fifteen, "suffers from scoliosis and severe developmental delays." (*Id.* at 4.) I.R.

testified in detail regarding her experiences filing appeals on behalf of Sarai for specific

medications, in which I.R. represented herself in writing and by phone (Doc. No. 1748-4 at 59-

63, 65-70); and filing an ultimately successful appeal related to nursing services for Sarai, which

included a phone hearing with an Administrative Law Judge, and during which time the nursing

service continued as previously scheduled (*id.* at 97-105, 199-200). With respect to Amber, I.R.

testified that, though she was required to obtain prior authorizations for Amber's prescriptions

and for referrals to certain medical specialists, often leading to delays, she had never received a

denial for medications, services, or medical equipment related to Amber. (*Id.* at 39-48.)

The final deposition is that of M.U., next friend to Gunnar U. (Doc. No. 1748-5.)

Gunnar is two years old, and suffers from "a stomach deformity and severe acid reflux for which

he requires multiple medications." (Doc. No. 1746 at 5.) M.U. testified that she has filed

successful appeals and that she was pleased by the appeals process. (Doc. No. 1748-5 at 20, 96.)

Additionally, M.U. testified about an appeal regarding a lapse in Gunnar's coverage, during

which time M.U. had to pay out-of-pocket for Gunnar's medications (*id* at 38-47, 50-55);

appeals regarding Gunnar's medications (*id.* at 56-58, 65-66); and being billed for a piece of

medical equipment Gunnar needed (*id.* at 70-76).[2]

In light of this extensive testimony, the Court finds that it has sufficient evidence before it

to rule on Plaintiffs' request for certification, and does not believe that discovery is necessary.

Turning to Defendants' specific requests, there is more than enough testimony in the depositions

---

[2] Although M.U. often refers to her "children" generally during her deposition, she at one point clarifies that she has never had to file an appeal for her daughter, Hannah, who is not among the proposed class representatives. (Doc. No. 1748-5 at 89.)

regarding the individuals' experience with the TennCare appeals process, and the Court therefore finds Defendants' request for a "more detailed exploration" to be unnecessary. It appears to the Court that the only real purpose served by discovery into this topic would be to have the testimony officially taken as a part of this case, rather than simply rely on the depositions from *John B.* filed by Plaintiffs. However, the Sixth Circuit does not require discovery when certifying a class representative; the Sixth Circuit merely states that a court, when deciding whether to certify a class and class representatives, should look at more than just the pleadings, which are by their nature one-sided. *In re Am. Med. Sys.*, 75 F.3d at 1079. Here, Plaintiffs have submitted transcripts of the next friends' testimony given under oath less than one year ago—testimony that is both detailed and relevant to this case.

Second, to the extent that Defendants wish to inquire about the next friends' obligations as class representatives, the evidence submitted by Plaintiffs is sufficient to address that concern. With this request, the Court understands Defendants to be referring to the second prong of the Rule 23(a)(4) analysis, that "the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* (quotation omitted). The *John B.* depositions establish that the next friends are familiar with the TennCare appeals process, which the Court finds to be relevant to their ability to prosecute this case, as explained more fully below.

Third, the Court does not find Defendants' request for a "more detailed exploration" of the next friends' understanding of the consent decree in this case to be a necessary inquiry. The Sixth Circuit has held that a named plaintiff "need not demonstrate extensive knowledge about the legal or factual details of their cause of action." *In re Nortel Networks Corp. "ERISA" Litig.*, 2009 U.S. Dist. LEXIS 130143, at *40. Consequently, the next friends need not have detailed knowledge about the consent decree, and the Court finds this request to be without merit.

Next, several of Defendants' requests touch on the potential for conflicts among the proposed representatives. In terms of conflicts, the focus should be on potential conflicts among class members. *Beattie*, 511 F.3d at 563. With this in mind, the Court fails to understand how the fact that these individuals are also serving as named plaintiffs in another class action relating to TennCare somehow raises a conflict of interest, as Defendants imply. Neither does the Court believe that there is necessarily a conflict of interest among class members because these proposed representatives are all minors, while the class includes individuals over age twenty-one. Defendants merely speculate that the age of the named plaintiffs could give rise to a conflict, given the differences in benefits afforded to minors, without providing much argument as to why that would cause there to be a specific conflict in this case. There is no reason to think that the named class representatives have interests different to those of all class members, given their experiences with the appeals process. Similarly, there is no reason to think that their interest in enforcing the consent decree in *John B.* would in any way lessen their interest in enforcement of the consent decree here. Moreover, from a practical perspective, the Court doubts that discovery would shed any light on these issues. Regardless of the questions and answers given in depositions, the fact will remain that these individuals also serve as class representatives in *John B.* Thus, Defendants would be likely to continue pressing their arguments that this results in a conflict, thus disqualifying the class representatives from being certified in this case—an argument the Court finds to be meritless, given the established legal requirements for certifying class representatives.

Lastly, to the extent that Defendants wish to question the representatives about potential TennCare reform, the Court finds such questioning to be irrelevant. Should there be a change in benefits in the future due to reform, then the effect of such changes on this case can be addressed

23

at that point in time. Additionally, the next friends' opinions on such reform are highly immaterial, as the consent decree relates to the status of TennCare as is, and the opinions of four adults with children enrolled in TennCare do not in any way affect the State's current obligations to TennCare enrollees in general, or the State's specific obligations resulting from the consent decree in this case.

In light of the evidence in the record, the Court finds that the proposed representatives satisfy the two requirements established by the Sixth Circuit: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (quotation omitted). As to the first part of the test, the evidence demonstrates that the representatives are a "part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562. All of the minors are TennCare enrollees, and five of the six have participated in the appeals process. Although T.R. testified that she has not filed appeals on behalf of Amber, as a TennCare enrollee in need of medical services, Amber has the same interest in the due process protections afforded by the consent decree in this case, and would suffer the same injury as other class members should the decree be violated.

Secondly, the Court finds that the evidence shows that "the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (quotation omitted). The Court believes that the next friends can "vigorously prosecute the interests of the class," as they have already demonstrated that they are dedicated advocates for their children by pursuing TennCare appeals on behalf of the children. Additionally, the next friends' experience as class representatives in *John B.* further supports

their qualifications to serve as class representatives here, as they are undoubtedly familiar with the processes involved in litigating a class action. Moreover, the Court does not find there to be any concerns about inter-class conflicts, as the consent decree in this case concerns general protections for all TennCare enrollees. *See Beattie*, 511 F.3d at 563.

As a result, the Court **DENIES** Defendants' Motion insofar as it seeks discovery into Plaintiffs' proposed class members. The Court further **GRANTS** Plaintiffs' Motion, and **CERTIFIES** the following class members to serve as class representatives for the class of Plaintiffs: Binta B., by her next friend, S.A.; Aiden L. and Nakia L., by their next friend S.L.; Sarai R. and Amber R., by their next friend T.R.; and Gunnar U., by his next friend, M.U.


### IV.    CONCLUSION

For the reasons given above, Plaintiffs' Motion is **GRANTED**, and Defendants' Motion is **DENIED**. The Court **CERTIFIES** the following class members to represent the class of Plaintiffs: Binta B., by her next friend, S.A.; Aiden L. and Nakia L., by their next friend S.L.; Sarai R. and Amber R., by their next friend T.R.; and Gunnar U., by his next friend, M.U.

It is so ORDERED.

Entered this ____23^rd_____ day of April, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT